BOLIN, Judge.
Plaintiff, owner of a building supply business, furnished materials to a contractor, H. R. Stover, for use in making repairs to the home of defendant, Bennie Fowler. The contract between Stover and Fowler concerning the repairs was reduced to writing but was not recorded. Plaintiff furnished materials to Stover during the period from December 2, 1957, to January 11, 1958, which were used in making repairs.
The contractor failed to complete the job and was held to be in default on March 6, 1958, and discharged by the owner on the same date. A release was obtained from him by Gaston and a contract was entered into on March 6, 1958, by Fowler and Gas-ton for completion of the job. The repairs were completed and accepted by the owner on March 31, 1958.
Gaston was fully paid for his work under the contract he entered into with Fowler, but was not paid the balance due on materials furnished to and used by Stover in attempted fulfillment of the first contract. The balance due and owing plaintiff by Stover after credits were made amounted to $1,520.45, which sum, together with interest, is the amount sued for.
Gaston filed a materialmen’s lien and privilege on May 28, 1958, and suit was filed on May 27, 1959, against both Stover and Fowler.
Defendant’s exception of vagueness was sustained and plaintiff’s petition was amended accordingly. The exceptions of no right of action and no cause of action were referred to the merits and on trial thereof, were sustained on the premise that the lien, to be timely, should have been filed within-60 days of the cancellation of the first contract. The judgment dismissed the plaintiff’s claim insofar as the defendant Fowler was concerned and the material-men’s lien filed against the property was ordered to be duly canceled and erased.
Plaintiff appealed from the judgment insofar as it affected his claim against Fowler. No further action has been taken against Stover because of information received that he has taken bankruptcy.
The contention of plaintiff is that the computation of time should not begin until the job was completed which, in this case, was March 31, 1958. Defendant argues that the 60 days referred to in the statute should be computed from the date of the cancellation of the first contract, or March 6, 1958.
The issue presented for determination is purely a question of law and is: Does time begin to run, under LSA-R.S. 9:4812, where there are two or more unrecorded contracts, from the date of cancellation of each contract under which the material was furnished, or, rather, from the date of completion of the job?
Plaintiff cites as authority in support of his position that the lien was timely filed, the case of R. F. Mestayer Lumber Co., Inc. v. Tessner, La.App.Orleans, 1958, 101 So.2d 238. In that case it was held that where the contractor who was employed to make repairs, discontinued the work before completion, was discharged therefrom, and a lien was filed by a materialman more than 60 days from the discontinuance, that the work had not been completed or abandoned more than 60 days before the filing of the lien and the lien was, therefore, timely filed.
Defendant urges us to follow the holding in General Lumber & Supply Co. v. McLellan, La.App. 1 Cir., 1941, 200 So. 501. *362 In that case, the contractor undertook the construction of a swimming pool and repair of a home for the same owner. The contract for repairs to the home was entered into after the completion of the pool and the lien was filed for materials furnished for construction of the pool within 60 days after the completion of the repairs to the house but more than the statutory limit after the completion of the swimming pool. The court held that to be timely, the lien had to be filed within 60 days of the completion of the first contract as there were two separate contracts for two distinct projects.
Another type situation that has been considered in connection with this problem is that of abandonment. It has been held that where there is definite abandonment of the work by the owner, time commences to run from the time that such abandonment becomes apparent. Singer Lumber Co. Inc. v. King, La.App.Orleans, 1950, 45 So.2d 567.
It is readily perceived that the case at bar presents none of the factual circumstances outlined above. In the Mestayer Lumber Co. case the work had been discontinued by the one employed to do the construction and the lien was filed within 60 days after the continuance of the work by another .and, further, there appeared to be no separate contracts involved. The General Lumber Co. case presented the circumstances where there were two contracts for two distinct projects.
Here, we are concerned with contracts with two separate contractors for the same proj ect, the materialman having full knowL edge of the default and discharge under the first contract, and in fact being the second contractor.
At 57 C.J.S. Mechanics’ Liens § 144, is found:
“Where labor or materials are furnished under separate contracts, the contracts cannot be tacked together so as to enlarge the time for filing a lien for what was done or furnished under either, but a lien must be filed for what was done or furnished under each contract within the , statutory period after its completion. This is true, even though the contracts are between the same parties or relate to the same building or improvement, and a for-tiori it is true where the contracts are between the same claimant and different parties or where they relate to different buildings or improvements.”
The annotation 36 Am.Jur. Mechanic’s Liens § 140, pocketparts, and 175 A.L.R. 135 state the same principles of law as set forth above from C.J.S.
However, the annotations do not cover exactly-the same circumstances with which we are concerned. The writers there base the principles set forth on instances where the contracts were between the same parties; which related to the same building; where the claimant and different parties were involved; .and where the contract related to different buildings and improvements. Here, there were actually two contractors which removes the case from the first basis. The same building was involved but only after a break in the sequence occurred. Of course, the last two situations related in the annotation do not come within the facts of this case and the statements contained in these references can not be said to give conclusive authority for a decision here.'
Examining LSA-R.S. 9 :4812 we find the pertinent portions to read:
“When the owner, or his authorized agent, undertakes the work of construction, improvement, repair, erection, or reconstruction, for the account of the owner, for which no contract has been entered into, or when a contract has been entered into but has not been recorded, as and when required, then any person furnishing service or material or performing any labor on the said building or other work may *363 record in the office of the clerk of court or recorder of mortgages in the parish in which the said work is being done or has. been done, a copy of his estimate or an affidavit of his claim or any other writing evidencing same, which recordation, if done within sixty days after the date of the last delivery of all material upon the said property or the last performance of all services or labor upon the same, by the said furnisher of material or the said laborer, shall create a privilege upon the building or other structure and upon the land upon which it is situated, in favor of any such person who shall have performed service or labor or delivered material in connection with the said work or improvement, as his interest may appear. The said privilege, recorded as aforesaid, shall constitute a privilege against the property for a period of one year from the date of its filing, and may be enforced' by a civil action in any court of competent jurisdiction in the parish in which the land is situated and such right of action shall prescribe within one year from the date of the recordation of the privilege in the office of the recorder of mortgages. The effect of the registry ceases, even against the owner of the property or the property itself, if the inscription has not been renewed within one year from the date of the recordation. Any person furnishing service or material or performing any labor on the said building or other work to or for a contractor or subcontractor, when a contract, oral or written has been entered into, but no contract has been timely recorded, shall have a personal right of action against the owner for the amount of his claim for a period of one year from the filing of his claim, which right of action shall not prescribe within one year of the date of its recordation, or the reinscription thereof. * * * ” (Emphasis ours.)
There is no controversy, and in fact both parties cite the well-known rule, that such liens or privileges are in derogation of common rights and must be strictly construed.
Plaintiff argues that the proper interpretation of the statute is that the time within which to successfully file a lien claim commences only from the date the job is actually completed. It is his position that the existence of distinct contracts is not relative in the determination of the question presented here.
We think this argument is incorrect. The statute refers to “a contract” and this indicates that the meaning the redactors intended to convey is the material furnished relates to the contract under which it is furnished and not to the job itself without reference to the contract. In other words, where there is full knowledge by the materialman of the existence of two or more distinct and separate contracts, the running of the 60 day period allowed in which to file the lien commences át the termination of that contract, whether by default or completion.
Where there is a contract in existence and within the knowledge of the mate-rialman, he furnishes under that contract and is governed by its terms and its life and the formation of another contract can not be used to extend the time in which to file the lien claim. To allow such extension of time would be beyond the limits of stricti juris by which we are bound in this instance.
■ It is, therefore, ordered that the judgment of the lower court be affirmed and the exception lodged by the defendant be sustained at appellant’s cost.
Affirmed.